Slip Op. 20-148

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>WHEATLAND TUBE COMPANY, INDEPENDENCE TUBE CORPORATION, and SOUTHLAND TUBE, INCORPORATED,<br><br>    Defendant-Intervenors. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 19-00208 |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's remand redetermination in the 2017–2018 administrative review of the antidumping duty order covering circular welded carbon steel pipes and tubes from Thailand.]

Dated: October 19, 2020

Daniel L. Porter, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, D.C., for Plaintiff Saha Thai Steel Pipe Public Company Limited. Tung A. Nguyen and James P. Durling also appeared.

Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Brandon J. Custard, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Roger B. Schagrin, Elizabeth J. Drake, and Paul W. Jameson, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor Wheatland Tube Company. Christopher T.

Cloutier, Luke A. Meisner, Geert M. De Prest, Kelsey M. Rule, Nicholas J. Birch, and William A. Fennell also appeared.

Alan H. Price, Robert E. DeFrancesco III, Cynthia C. Galvez, and Theodore P. Brackemyre, Wiley Rein, LLP, of Washington, D.C., for Defendant-Intervenors Independence Tube Corporation and Southland Tube, Incorporated. Adam M. Teslik, Christopher B. Weld, Derick G. Holt, Elizabeth V. Baltzan, Elizabeth S. Lee, Jeffrey O. Frank, Laura El-Sabaawi, Maureen E. Thorson, Stephanie M. Bell, Tessa V. Capeloto, and Timothy C. Brightbill also appeared.

Choe-Groves, Judge:  Plaintiff Saha Thai Steel Pipe Public Company Limited ("Saha Thai" or "Plaintiff") challenges the U.S. Department of Commerce's ("Commerce") final results in the March 1, 2017 to February 28, 2018 administrative review of the antidumping duty order on circular welded carbon steel pipes and tubes from Thailand.  Before the court is Plaintiff's motion for judgment on the agency record.  For the reasons discussed below, the court remands Commerce's Final Results for further consideration.

## ISSUES PRESENTED

The court reviews the following issues:

1. Whether Commerce's particular market situation adjustment to the cost of production when conducting a sales-below-cost test is in accordance with the law; and

2. Whether Commerce's duty drawback adjustment is in accordance with the law.

## BACKGROUND

Commerce entered the antidumping duty order on circular welded carbon steel pipes and tubes from Thailand in 1986.  Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes from Thailand, 51 Fed. Reg. 8,341 (Dep't Commerce Mar. 11, 1986).  Commerce initiated an administrative review of the antidumping duty order for the period of March 1, 2017 through February 28, 2018.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 83 Fed. Reg. 19,215, 19,217 (Dep't Commerce May 2, 2018) (PR 104).  Commerce

selected Saha Thai, a Thai producer of subject merchandise, as the sole mandatory respondent. Resp't Selection Mem., PR 20 (June 25, 2018).

After Saha Thai submitted questionnaire responses, but before Commerce issued preliminary results, domestic producer Wheatland Tube Company ("Wheatland") "allege[d] that a particular market situation existed in Thailand during the period of review ("POR") such that the costs of production of circular welded pipe . . . are distorted and do not accurately reflect the cost of production in the ordinary course of trade." Wheatland Allegation 1, PR 47–51 (Nov. 1, 2018). Wheatland averred that: (1) the Royal Thai Government subsidized Thai producers of hot-rolled coil, enabling its sale at below-market prices to downstream producers of circular welded carbon steel pipes, and (2) the prices for imports of hot-rolled coil into Thailand were distorted through dumping, subsidization, and global overcapacity. Id. at 6–7.

Commerce published the preliminary results of its review on May 17, 2019. Circular Welded Carbon Steel Pipes and Tubes from Thailand, 84 Fed. Reg. 22,450 (Dep't Commerce May 17, 2019) (prelim. admin. review) and accompanying Prelim. Decision Mem., PR 81 (May 10, 2019) ("PDM") (collectively, "Preliminary Results"). In the Preliminary Results, Commerce calculated a weighted-average dumping margin of 5.32% for Saha Thai. 84 Fed. Reg. at 22,451. Commerce determined in the Preliminary Results that a particular market situation in Thailand distorted the cost of production of circular pipes and tubes. PDM at 6–7. Commerce determined preliminarily that the record was sufficient to quantify the particular market situation's impact and to administer an alternative calculation methodology to address distortions in Saha Thai's production costs. Id. at 7–8. Commerce relied on the subsidy rate determined for hot-rolled steel coil producers in the countervailing duty investigation of hot-rolled steel flat products from Thailand. Id. at 6–7; Certain Hot-Rolled Carbon Steel Flat Products From Thailand, 66 Fed.

Reg. 50,410 (Dep't Commerce Oct. 3, 2001). In order to adjust the alleged distortions in hot-rolled steel coil input prices, Commerce increased the input's price by: (1) the United States subsidization rate applicable to hot-rolled steel producers from Thailand; (2) the safeguard duty rate imposed by the Government of Thailand on hot-rolled steel coil imports; and (3) the applicable antidumping duty rates for hot-rolled steel coil imported from certain countries. See PDM at 7–8.

Commerce published the final results of its review on November 20, 2019. Circular Welded Carbon Steel Pipes and Tubes from Thailand, 84 Fed. Reg. 64,041 (Dep't Commerce Nov. 20, 2019) (final results of antidumping duty administrative review and final determination of no shipments; 2017–2018); see also Issues and Decision Mem. for the Final Results of Antidumping Duty Administrative Review; 2017–2018), PR 121 (Nov. 13, 2019) ("IDM") (collectively, the "Final Results"). In the Final Results, Commerce calculated a weighted-average dumping margin of 5.15% for Saha Thai. 84 Fed. Reg. at 64,042. Commerce maintained its determination that a particular market situation distorted the cost of hot-rolled steel coil, a key component of the subject merchandise. IDM at 4–13

Saha Thai initiated this action challenging Commerce's Final Results on November 27, 2019. Summons, Nov. 27, 2019, ECF No. 1; Compl., Nov. 27, 2019, ECF No. 6. The court entered a statutory injunction on December 4, 2019, granted Wheatland's motion to intervene on December 19, 2019, and granted Independence Tube Corporation and Southland Tube, Incorporated's motion to intervene on December 26, 2019. Order for Statutory Inj. Upon Consent, Dec. 4, 2019, ECF. No. 11; Order, Dec. 19, 2019, ECF No. 17; Order, Dec. 26, 2019, ECF No. 24.

Saha Thai moved for judgment on the agency record. Pl. Saha Thai's Mot. J. Agency R. and Br. in Supp. ("Saha Thai Br."), May 15, 2019, ECF Nos. 32, 33. Defendant United States ("Defendant") and Defendant-Intervenors Wheatland, Independence Tube Corporation, and Southland Tube, Incorporated (collectively, "Defendant-Intervenors") responded. Def.'s Resp. to Pl. Mot. J. Agency R. ("Def. Resp."), June 15, 2020, ECF No. 36; Def.-Intervenors' Resp. Br. ("Def.-Intervenor Br."), June 15, 2020, ECF No. 35. Plaintiff replied. Saha Thai's Reply Br., July 13, 2020, ECF No. 37. Defendant filed the joint appendix on July 27, 2020. J.A., July 27, 2020, ECF Nos. 38, 39.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the court authority to review actions contesting the final results of an administrative review of an antidumping duty order. The court will uphold Commerce's determinations unless they are unsupported by substantial record evidence, or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.     Particular Market Situation

#### A.     Governing Law

Commerce determines antidumping duties by calculating the amount by which the normal value of subject merchandise exceeds the export price or the constructed export price for the merchandise. 19 U.S.C. § 1673. When reviewing antidumping duties in an administrative review, Commerce must determine: (1) the normal value and export price or constructed export price of each entry of the subject merchandise, and (2) the dumping margin for each such entry. Id. § 1675(a)(1)(B), (a)(2)(A). The statute dictates the steps by which Commerce may calculate

normal value "to achieve a fair comparison" with export price or constructed export price. Id. § 1677b(a).

First, the statute specifies the methodology for Commerce to determine which sales should be considered and disregarded in calculating normal value. Normal value is "the price at which the foreign like product is first sold . . . in the exporting country . . . in the ordinary course of trade." Id. § 1677b(a)(1)(B)(i). Sales outside the ordinary course of trade are excluded from normal value. "Ordinary course of trade" is defined in Section 1677(15) as excluding: (1) sales made at less than the cost of production, and (2) sales that cannot be compared properly with the export price or constructed export price due to a particular market situation. Id. § 1677(15)(A), (C). To determine whether "sales . . . have been made at prices that represent less than the cost of production," the statute directs Commerce to conduct the sales-below-cost test. Id. § 1677b(b)(1). The cost of production is defined by statute to include the cost of materials and processing, amounts for selling, general, and administrative expenses, and the cost of all containers and expenses incidental for shipment. Id. § 1677b(b)(3). Sales that Commerce determines, by application of the sales-below-cost test, were made at prices below the cost of production or that Commerce determines were made in a particular market situation, are outside the ordinary course of trade and are disregarded from the calculation of normal value. See id. § 1677b(b)(1), (a)(1)(B)(i). "Whenever such sales are disregarded, normal value shall be based on the remaining sales of the foreign like product in the ordinary course of trade." See id. §§ 1677b(a)(1)(B)(i), (b)(1); 1677(15)(A), (C).

Second, when using market prices to determine normal value, Commerce may make certain adjustments to the remaining home market prices. The statute lists authorized adjustments for incidental shipping, delivery expenses, and direct taxes; and for differences

between the subject merchandise and foreign like products in quantity, circumstances of sale, or level of trade. Id. § 1677b(a)(6), (7).

Third, when using home market sales for normal value, if Commerce cannot determine the normal value of the subject merchandise based on home market sales, then Commerce may use qualifying third-country sales or a constructed value as a basis for normal value. Id. § 1677b(a)(4), (a)(1)(B)(ii), (b)(1). Constructed value represents: (1) the cost of materials and fabrication or other processing of any kind used in producing the merchandise; (2) the actual amounts incurred and realized for selling, general, and administrative expenses, and for profits, in connection with the production and sales of a foreign like product, in the ordinary course of trade, for consumption in the foreign country; and (3) the cost of packing the subject merchandise. Id. § 1677b(e). When calculating constructed value, if Commerce determines that a particular market situation exists "such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, [then] [Commerce] may use . . . any other calculation methodology." Id.

### B. Unauthorized Adjustment to the Cost of Production for the Sales-Below-Cost Test

For purposes of determining whether sales were made at less than cost, in this case Commerce made an adjustment to Saha Thai's reported cost of production to account for the particular market situation Commerce determined existed during the period of review in the Thai domestic market prices for the input of hot-rolled coil. IDM at 4. Saha Thai argues that Commerce has no legal authority to make a particular market situation adjustment to Saha Thai's costs of production for sales-below-cost test purposes. Saha Thai Br. at 5–15.

As this Court has held repeatedly, the statute does not authorize a particular market situation adjustment to the cost of production when Commerce applies the sales-below-cost test

to determine which home market sales to exclude from the calculation of normal value. See Saha Thai Steel Pipe Pub. Co. v. United States, 43 CIT __, __, 422 F. Supp. 3d 1363, 1368–70 (2019); Husteel Co. v. United States, 44 CIT __, __, 426 F. Supp. 3d 1376, 1383–89 (2020); Borusan Mannesmann Boru Sanayi Ve Ticaret A.Ş. v. United States ("Borusan"), 44 CIT __, __, 426 F. Supp. 3d 1395, 1411–12 (2020). Defendant recognizes the existence of this line of cases in which the Court has repeatedly rejected Commerce's attempts to apply the particular market situation cost adjustment for purposes of the sales-below-cost test, yet Defendant characterizes Commerce's unlawful adjustments as a disagreement between the Court and Commerce. Def. Resp. at 23. Defendant argues that these cases, including this court's review of the prior administrative review of the related antidumping duty order, Saha Thai Steel Pipe Public Co. v. United States, 43 CIT __, 422 F. Supp. 3d 1363 (2019), "are not final and remain subject to appeal. Thus, they are not binding on the Court (or Commerce) in this case." Def. Resp. at 23.

Here, Commerce applied an adjustment to the cost of production calculation set forth in Section 1677b(b)(3) for purposes of the sales-below-cost test pursuant to Section 1677b(b)(1). See IDM at 4–7. Commerce relies mistakenly on Section 504 of the Trade Preferences Extension Act of 2015 ("TPEA"), Pub. L. No. 114-27, 129 Stat. 362, for the authority to adjust the cost of production for the sales-below-cost test. Commerce explains that:

> [T]he term "ordinary course of trade," defined in section 771(15) of the Act, includes "situations in which the administering authority determines that the particular market situation prevents a proper comparison {of normal value} with the export price (EP) or constructed export price (CEP)." Thus, where a [particular market situation] affects the [cost of production] of the foreign like product, such as through distortions to the cost of inputs, it is reasonable to conclude that such a situation may prevent a proper comparison of normal value with the U.S. price, irrespective of whether normal value is based on comparison market prices or constructed value. Saha Thai's claim that an examination of a cost-based [particular market situation] for purposes of the [cost of production] goes beyond the plain language of the Act fails to consider that the provision at issue, section 773(e) of the Act, specifically includes the term "ordinary course of trade." Thus,

> the definition of that term, again, found in section 771(15) of the Act, is integral to that cost-based [particular market situation] provision as well as the sales-based [particular market situation] provision. Accordingly, we disagree with Saha Thai that Commerce cannot analyze a cost-based [particular market situation] claim in determining whether a company's comparison market sale prices were below cost, and, therefore, are outside the "ordinary course of trade."

IDM at 6–7. Commerce exercised "discretion to use 'any other calculation methodology' if costs are distorted by a cost-based [particular market situation], including for the purposes of determining the [cost of production] under section 773(b)(3) of the Act." Id. at 7. Commerce made a particular market situation adjustment to costs based on Section 1677b(e). Commerce asserts that the cost-based particular market situation analysis and alternative calculation methodology set forth in Section 1677b(e) are available whether Commerce bases normal value on home market sales or constructed value. Def. Resp. at 20; IDM at 5–7. Defendant also asserts that the sales-below-cost test set forth in Section 1677b(b)(1), by relying on the phrase "ordinary course of trade" defined in Section 1677(15)(C) as excluding sales made in a particular market situation, authorizes Commerce to conduct the particular market situation analysis and adjust costs based on Sections 1677b(b)(1) and 1677(15)(C). Id.

Section 504 of the TPEA amended the statutory provisions governing constructed value. The amendment authorized Commerce to use alternative cost methodologies when computing constructed value after making a particular market situation determination. The amended language provides:

> For purposes of paragraph (1) [in reference to calculating constructed value] if a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, the administering authority [Commerce] may use another calculation methodology under this part or any other calculation methodology.

19 U.S.C. § 1677b(e). In other words, the amended statute gives Commerce discretion to adjust the cost of production calculation methodology when determining constructed value if Commerce determines that a particular market situation exists. See id. Commerce cannot rely on Section 1677b(e) when, as here, Commerce bases normal value on home market sales. No part of the statute allows Commerce to use any other methodology when market sales are used for normal value. See Saha Thai Steel Pipe Pub. Co., 43 CIT at __, 422 F. Supp. 3d at 1368–70; Husteel Co., 44 CIT at __, 426 F. Supp. 3d at 1383–89; Borusan, 44 CIT at __, 426 F. Supp. 3d at 1411–12. The "any other methodology" language is reserved solely for when normal value is determined by constructed value. Husteel Co., 44 CIT at __, 426 F. Supp. 3d at 1388.

As to Sections 1677b(b)(1) and 1677(15)(C), Defendant argues that Section 1677b(b)(1)'s reference to the phrase "ordinary course of trade" authorizes Commerce to conduct a cost-based particular market situation analysis and adjustment in the course of the sales-below-cost test. Def. Resp. at 19. Section 1677b(b)(1) provides:

> (b) Sales at less than cost of production.
>
>   (1) Determination; sales disregarded. Whenever the administering authority has reasonable grounds to believe or suspect that sales of the foreign like product under consideration for the determination of normal value have been made at prices which represent less than the cost of production of that product, the administering authority shall determine whether, in fact, such sales were made at less than the cost of production. If the administering authority determines that sales made at less than the cost of production--
>
>     (A) have been made within an extended period of time in substantial quantities, and
>
>     (B) were not at prices which permit recovery of all costs within a reasonable period of time,
>
> such sales may be disregarded in the determination of normal value. Whenever such sales are disregarded, normal value shall be based on the remaining sales of the foreign like product in the ordinary course of trade. If no sales made in the

>     ordinary course of trade remain, the normal value shall be based on the constructed
>     value of the merchandise.

19 U.S.C. § 1677b(b)(1). Section 1677b(b)(1) sets forth the sales-below-cost test based on the calculation specified in Section 1677b(b)(3) to confirm that sales were made at less than the cost of production. Within Section 1677b(b) for "Sales at less than cost of production," the sub-section 1677b(b)(1) for "Determination; sales disregarded" authorizes Commerce to disregard those below-cost sales as outside the ordinary course of trade. Id. § 1677b(b)(1). The plain language of the reference to "ordinary course of trade" provides that sales on which normal value are based must be in the ordinary course of trade. Id. § 1677b(b)(1), (a)(1)(B)(i). Sales made at less than cost, between affiliates, and in a particular market situation are excluded from the definition of "ordinary course of trade" in Section 1677(15). Thus, sales in those three categories are disregarded for purposes of calculating normal value based on market sales. Nothing in the statute grants Commerce the authority to modify the sales-below-cost test to permit a particular market situation analysis or adjustment, and the specificity of the sales-below-cost test leaves no ambiguity. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

In sum, although Section 504 of the TPEA amended Section 1677b(e) for "Constructed Value" to grant Commerce discretion to use an alternative calculation methodology, and Section 1677(15) for "Ordinary course of trade" to grant Commerce an additional ground on which it may disregard sales from the normal value calculation when using home market sales, the Section 504 amendment did not amend Section 1677b(b), which sets out the calculation of the cost of production for the sales-below-cost test to determine whether and which sales should be disregarded as outside the ordinary course of trade when normal value is based on home market

sales. "[W]here 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Thomas v. Nicholson, 423 F.3d 1279, 1284 (Fed. Cir. 2005) (quoting Russello v. United States, 464 U.S. 16, 23 (1983)). Thus, the statute authorizes Commerce to disregard certain sales when basing normal value on home market sales, or to use an alternative calculation methodology upon a cost-based particular market situation determination when basing normal value on constructed value.

Here, however, Commerce applied a cost-based particular market situation adjustment for purposes of the sales-below-cost test of Section 1677b(b)(1), while basing normal value on home market sales. The statute does not authorize Commerce to adjust the cost of production as an alternative calculation methodology when using normal value based on home market sales under Section 1677b(e) as claimed by Commerce. The statute also does not authorize Commerce to adjust the cost of production for purposes of the sales-below-cost test under Sections 1677b(b)(1) and 1677(15)(C) as claimed by Commerce. Section 1677b(e) applies only when Commerce bases normal value on constructed value. Because Commerce based normal value on home market sales here, not constructed value, Section 1677b(e) is inapplicable. Nothing in Sections 1677b(b)(1) and 1677(15)(C) authorizes Commerce to adjust the cost of production for the sales-below-cost test.

Based on the foregoing, the court concludes that Commerce's particular market situation adjustment for purposes of the sales-below-cost test while basing normal value on home market sales is not in accordance with the law. The court does not reach the question of whether Commerce's particular market situation determination is supported by substantial evidence.

**II.　Duty Drawback Adjustment**

Saha Thai argues that Commerce should have made a duty drawback adjustment for "imputed Thai AD and safeguard duties that [Commerce] calculated on Saha Thai's purchased [hot-rolled coil] pursuant to its [particular market situation] adjustment methodology."  Saha Thai Br. at 34.  Defendant responds that Commerce's adjustment of Saha Thai's acquisition costs was based on a particular market situation that led to distortions in hot-rolled steel coil prices, and that this adjustment was based on amendments to the TPEA, not the duty drawback statute.  Def. Resp. at 37.  Defendant argues further that Saha Thai did not develop the record to establish that Saha Thai was exempt from paying antidumping and safeguard duties.  Id.  Defendant asserts that for these reasons, Commerce did not include antidumping or safeguard duties when calculating the duty drawback adjustment.  Id.  Defendant-Intervenors aver that "no additional duty drawback adjustment to U.S. price is warranted for the completely unrelated [particular market situation] adjustment Commerce applied."  Def.-Intervenor Br. at 19.

The court remands for Commerce to eliminate the particular market situation adjustment because Commerce may not adjust the cost of production when using normal value based on home market sales, and thus the court need not consider whether Commerce should have made a duty drawback adjustment.

## CONCLUSION

The court concludes that Commerce's cost-based particular market situation adjustment is not in accordance with the law.  The court does not opine on whether Commerce should have made a duty drawback adjustment.

Accordingly, it is hereby

**ORDERED** that the <u>Final Results</u> are remanded for Commerce to remove its cost-based particular market situation adjustment and recalculate the respondents' weighted-average dumping margins without a particular market situation adjustment; and it is further

**ORDERED** that this action will proceed per the following schedule:

1. Commerce must file the remand redetermination on or before November 23, 2020;

2. Commerce must file the administrative record on or before December 11, 2020;

3. Comments in opposition to the remand redetermination must be filed on or before January 11, 2021;

4. Comments in support of the remand redetermination must be filed on or before February 11, 2021; and

5. The Joint Appendix must be filed on or before February 25, 2021.

       /s/ Jennifer Choe-Groves   
Jennifer Choe-Groves, Judge

Dated:   October 19, 2020  
       New York, New York